In the Matter of the Claim of MAX L. HARDEMAN, Appellant. METROPOLITAN APPLIED RESEARCH CENTER, INC., Respondent, and LOUIS L. LEVINE, as Industrial Commissioner, Respondent.

Third Department, April 26, 1973.

*Max L. Hardeman*, appellant in person.

*Paul, Weiss, Rifkind, Wharton & Garrison (Cameron Clark* of counsel), for Metropolitan Applied Research Center, Inc., respondent.

*Louis J. Lefkowitz, Attorney-General,* for Industrial Commissioner, respondent.

HERLIHY, P. J. This is an appeal by the claimant from a decision of the Unemployment Insurance Appeal Board, filed December 30, 1971, which affirmed a determination of the respondent, Industrial Commissioner, that the claimant was ineligible to receive unemployment insurance benefits; and motion by the respondent, Industrial Commissioner, to strike the appeal from the calendar pending an application by him to the Unemployment Insurance Appeal Board for reconsideration.

The claimant was denied benefits upon the ground that although he had been continuously employed throughout his base period, he did not have the required number of " weeks of employment " specified in section 527 of the Labor Law (all statutory references hereinafter are to the Labor Law unless otherwise specified) as defined in section 524 which requires that qualified weeks of employment are those weeks where a claimant works for an employer liable for contributions.

The facts are undisputed. The claimant, an accountant, was employed by the respondent, nonprofit corporation, Metropolitan Applied Research Center, Inc. (MARC), from April, 1970 through January, 1971. It is conceded that by amendment to the Unemployment Insurance Law (Labor Law, art. 18) MARC became subject to mandatory unemployment insurance coverage on January 1, 1971. Under prior law, MARC was exempt from mandatory coverage (Labor Law, § 560, subd. 4) and could

only be covered if it made a voluntary election to be covered (Labor Law, § 561, subd. 1). Subdivision 1 of section 561 provides that a nonprofit employer otherwise exempt from coverage could voluntarily elect to become liable for unemployment insurance coverage:

" (a) as of the first day of any calendar quarter, provided

" (1) he files an application with the commissioner to elect coverage for at least the unexpired portion of the calendar year in which such coverage is to commence and the following calendar year;

" (2) such application is filed on or before the last day of the calendar quarter in which coverage is to commence; and

" (3) the commissioner approve such application in writing."

Subdivision 2 of section 562 providing for the termination of voluntary coverage states: " Any employer who has elected to become liable for contributions under this article may terminate such liability hereunder after the expiration of the second calendar year of his liability, as of the first day of any calendar quarter, provided he files with the commissioner a written notice of his intent to terminate liability hereunder before the first day of the calendar quarter beginning with which this liability is to terminate." On February 10, 1969 MARC, in a letter signed by its accountant, applied for voluntary coverage pursuant to section 561. In a return letter dated March 5, 1969, the Department of Labor acknowledged receipt of the application for voluntary coverage and advised MARC that the application had been approved, to be effective January 1, 1969. The letter further stated that an account was being set up and that the employer would shortly receive notice of its assigned identification number. In a letter dated April 24, 1969 MARC wrote to the Department of Labor making an apology for having to " contract out " of voluntary coverage because of its high cost. The department's reply on June 9, 1969 was to the effect that MARC's numbered account had been canceled.

After a hearing the Referee sustained the initial determination that the claimant was ineligible for benefits. He stated: " If the employer made a binding voluntary election to become liable for contributions, claimant's objection [of ineligibility] would be well taken." He then held that full compliance with the statutory procedure for voluntary election of liability for unemployment insurance coverage did not necessarily make such liability irrevocable and that the Commissioner was within his vested authority in accepting the withdrawal of MARC's application. The finding of no voluntary liability meant that the

claimant did not come within coverage until January 1, 1971 and, therefore, lacked the required weeks of coverage in this base period to be eligible for benefits. The Referee's decision was affirmed by the Appeal Board.

Upon this appeal the claimant continues to assert that pursuant to sections 561 and 562, as quoted hereinabove, the employer had made a binding voluntary election for unemployment coverage in 1969 which, as a matter of law, included the entire period of his employment.

The sole issue raised is whether the Industrial Commissioner has the authority to revoke his approval of an employer's voluntary election to become liable for contributions or, as stated by counsel for the Industrial Commissioner, " The issue is whether the Industrial Commissioner may redetermine a ruling approving an application for voluntary coverage prior to the employers filing reports and paying contributions ". *The question is solely one of law and does not relate to whatever issues may subsequently arise in regard to the actual collection of any assessments against the employer for the period in question.* Since the question to be determined is solely one of law, the motion of the Industrial Commissioner to strike the case from the calendar pending an application to the Unemployment Insurance Appeal Board for reconsideration should be denied.

Title 5 of the Unemployment Insurance Law (Labor Law, § 560 *et seq.*) is addressed to the coverage of unemployment insurance, which is made dependent upon whether the employer in question is liable for contributions. Many employers are subject to mandatory coverage under section 560, however, certain nonprofit corporations are made exempt from liability (Labor Law, § 560, subd. 4). It appears to be agreed that the employer MARC was not mandated to have coverage. Although the language of subdivision 1 of section 561 is permissive in that it says an employer not otherwise liable *may* become liable if certain conditions are met, subdivision 2 of section 562 restricts termination of such voluntarily elected liability until after the completion of the second calendar year of such liability. If this language restricting the termination of liability is to be given any effect, then the permissive language of subdivision 1 of section 561 cannot be read as granting the Commissioner the discretion to allow terminations within the two-year period. There was no equivocation in the letter of approval from the Department of Labor and its plain import was that MARC's election had become binding. The Referee's focus on the fact that no contribution had been made in determining that the election had

not become irrevocable begs the question and cannot overcome the plain language of the letter.

It appears that the board had previously determined that in regard to whether or not an employer who has voluntarily elected to become covered must pay certain assessments, the acts of the Industrial Commissioner in regard to such voluntary coverage may be considered in determining liability for assessments. While those decisions called to our attention upon this appeal are not considered binding upon this court, it is noted that they are distinguishable from the present case in that they were not concerned with the entitlement of a claimant to benefits. As noted hereinabove, the question raised in this case is whether or not the coverage elected had been terminated so as to preclude the accrual of weeks of employment to this claimant. However, it was not the intent of the statute to require contributions prior to its becoming activated and effective. When the application was approved, becoming effective as of January 1, 1969, the claimant and the other employees of the employer became vested with coverage pursuant to the law. The cancellation of the " numbered account " neither provided nor could it provide, under the present circumstances, that it be retroactive. Under the statute, the filing by the employer of a written notice of intention to terminate liability is prospective.

This opinion does not reach and, therefore, necessarily does not consider the issue as to whether or not the employer is subject to actually paying contributions for the period at issue in this case.

The decision should be reversed, with costs, and the matter remitted for further proceedings not inconsistent herewith; the motion should be denied, with costs.

STALEY, JR., GREENBLOTT, COOKE and REYNOLDS, JJ., concur.

Decision reversed, with costs, and matter remitted for further proceedings not inconsistent herewith; motion denied, with costs.